192 S.W.3d 866 (2006)
In the Interest of C.M.C. and J.T.C., Minor Children.
No. 06-05-00089-CV.
Court of Appeals of Texas, Texarkana.
Submitted April 20, 2006.
Decided May 16, 2006.
*868 W. Tyler Moore, Jr., O'Donnell, Ferebee & McGonigal, PC, Houston, for appellant.
Trey D. Picard, Asst. District Attorney, Angleton, for appellee.
Before MORRISS, C.J., ROSS and CARTER, JJ.

OPINION
Opinion by Justice CARTER.
Lindsay Tope and Milton D. Tope appeal the trial court's granting of Brazoria County Children Protective Services' (CPS) motion to dismiss their petition for adoption based on lack of standing.[1] The Topes are the maternal grandparents of the children they are seeking to adopt. When Melissa Cole, Lindsay Tope's daughter, and her husband had their parental rights terminated on or about November 29, 2004,[2] the children were placed with their paternal aunt. On January 27, 2005, the Topes filed a petition to adopt their grandchildren. On February 17, 2005, CPS filed a "motion to dismiss" alleging the Topes lack standing to file an original petition for adoption. Seven days later, on February 24, 2005, the trial court held a hearing on CPS' motion and dismissed the petition.
The Topes complain that the trial court erred in three respects in dismissing the suit: 1) because there was no procedural basis to dismiss the Topes' case, 2) the out-of-state grandparents had "substantial past contact" with the children, and 3) without allowing the Topes to discover evidence concerning CPS' refusal to consent to the adoption. Because standing can be challenged through procedural means other than summary judgment and the Topes did not have substantial past contact as a matter of law, we affirm the judgment of the trial court.

Standing Can Be Challenged By Means Other Than Summary Judgment
In their first point of error, the Topes argue the trial court erred procedurally *869 in dismissing the case. Standing, as a necessary component of a court's subject-matter jurisdiction, is a constitutional prerequisite to maintaining a suit under Texas law. Tex. Ass'n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 444 (Tex. 1993). If a party lacks standing, a court lacks subject-matter jurisdiction to hear a case. Id. According to the Topes, an objection to standing may only be resolved by summary judgment. The Topes argue, because standing can only be raised by a motion for summary judgment, the trial court erred in hearing the motion to dismiss without the twenty-one-day notice required for a summary judgment motion. In addition, the Topes argue that standing is not an issue which can be raised through a motion to dismiss and that a dismissal is an inappropriate means to decide the merits of a case.
The Topes cite Gordy v. Alexander, 550 S.W.2d 146, 149 (Tex.Civ.App.-Amarillo 1977, writ ref'd n.r.e.), overruled on other grounds by statute as stated in Bank of Southwest, Nat'l Ass'n v. Stehle, 660 S.W.2d 572, 573 (Tex.App.-San Antonio 1983, writ ref'd n.r.e.), in support of their proposition that standing can be challenged only by summary judgment. In Gordy, the Amarillo Court of Appeals held that standing could only be challenged through a motion for summary judgment. Gordy, 550 S.W.2d at 149. The Topes contend they were entitled to twenty-one days' notice of the hearing pursuant to Rule 166a(c) of the Texas Rules of Civil Procedure applicable to summary judgments. See TEX.R. CIV. P. 166a(c).
While the issue of standing can be brought in the form of a summary judgment, standing can also be raised by other procedural means. Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 554 (Tex. 2000); see In re Pringle, 862 S.W.2d 722, 724 (Tex.App.-Tyler 1993, no pet.); cf. Caso-Bercht v. Striker Indus., 147 S.W.3d 460, 463 (Tex.App.-Corpus Christi 2004, no pet.) (standing challenged by summary judgment). Since Gordy was decided, the Texas Supreme Court has specifically authorized standing to be challenged through a plea to the jurisdiction. See Blue, 34 S.W.3d at 554.
CPS' motion to dismiss is in essence a plea to the jurisdiction.[3] A motion should be construed by its substance to determine the relief sought, not merely by its form or caption. Surgitek Bristol-Myers Corp. v. Abel, 997 S.W.2d 598, 601 (Tex.1999). In its motion, CPS argues that the Topes lack standing under the Texas Family Code to bring the petition for adoption. "Whether a determination of subject-matter jurisdiction can be made in a preliminary hearing or should await a fuller development of the merits of the case must be left largely to the trial court's sound exercise of discretion." Blue, 34 S.W.3d at 554. Rule 166a does not apply under the circumstances of this case.
The Topes also argue that a motion to dismiss is an inappropriate method to resolve the merits of a case and that the trial court erred in dismissing the suit because standing is not a basis for dismissal under the Texas Rules of Civil Procedure. See TEX.R. CIV. P. 150-165a. The Topes are correct that dismissal is an inappropriate means of deciding the merits of a case. See Lane v. Baxter Healthcare Corp., 905 S.W.2d 39, 41 (Tex.App.-Houston [1st Dist.] 1995, no writ); VanZandt v. Holmes, 689 S.W.2d 259, 261 (Tex.App.-Waco 1985, no writ). However, a decision *870 concerning whether a party has standing is not a decision deciding the merits of a case. See Blue, 34 S.W.3d at 554. "A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to whether the claims asserted have merit." Id. Without subject-matter jurisdiction, the trial court must dismiss the case. Am. Motorists Ins. Co. v. Fodge, 63 S.W.3d 801, 805 (Tex. 2001). Dismissal is the appropriate disposition when a party lacks standing; it is not a decision on the merits of the case. We overrule the Topes' first point of error.

The Topes Failed To Raise A Fact Issue Concerning Substantial Past Contact
The Topes argue, in their second point of error, the trial court erred in concluding they lacked "substantial past contact" with the children.
We will review de novo the trial court's ruling.[4] In Tex. Dep't of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 226-27 (Tex.2004), the Texas Supreme Court explained the appropriate standard of review when evidence is presented in support of a plea to the jurisdiction.[5] Whether a court has subject-matter jurisdiction is an issue of law, which is reviewed de novo. Tex. Dep't of Transp. v. City of Sunset Valley, 146 S.W.3d 637, 646 (Tex. 2004); Miranda, 133 S.W.3d at 226; Tex. Natural Res. Conservation Comm'n v. IT-Davy, 74 S.W.3d 849, 855 (Tex.2002); see SSJ-J, 153 S.W.3d at 134 (standing to bring an original suit affecting the parent-child relationship reviewed de novo); Chavez v. Chavez, 148 S.W.3d 449, 455 (Tex. App.-El Paso 2004, no pet.) (standing to intervene reviewed de novo). When a plea to the jurisdiction challenges the existence of jurisdictional facts, courts should consider relevant evidence submitted by the parties if necessary to resolve the issues raised. Miranda, 133 S.W.3d at 227. The trial court should examine the relevant evidence to determine whether a fact issue exists. Id. If a genuine issue of material fact exists, the trial court should not grant the plea to the jurisdiction and the jurisdictional issues should be resolved by the fact-finder. Id. at 228. Any fact issue must be settled by the jury. See County of Cameron v. Brown, 80 S.W.3d 549, 556 (Tex.2002). However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. Id.
*871 Standing to file an original petition for adoption is statutorily defined under the Texas Family Code. Section 102.005 provides:
An original suit requesting only an adoption or for termination of the parent-child relationship joined with a petition for adoption may be filed by:
(1) a stepparent of the child;
(2) an adult who, as the result of a placement for adoption, has had actual possession and control of the child at any time during the 30-day period preceding the filing of the petition;
(3) an adult who has had actual possession and control of the child for not less than two months during the three-month period preceding the filing of the petition; or
(4) another adult whom the court determines to have had substantial past contact with the child sufficient to warrant standing to do so.
TEX. FAM.CODE ANN. § 102.005 (Vernon 2002). The Topes contend they have standing to file an original petition for adoption because they had "substantial past contact" with the children. We emphasize that, under Section 102.005(4), the Topes have the same status as any adult with "substantial past contact."[6]
What constitutes "substantial past contact" is not statutorily defined, and our search of the caselaw has not revealed any caselaw definition. Noting that other subsections of the Texas Family Code require "possession and control," the Tyler court has interpreted "substantial past contact" as not requiring control over the child. Rodarte v. Cox, 828 S.W.2d 65, 69-70 (Tex. App.-Tyler 1991, writ denied). Although the Topes urge this Court to develop a standard for evaluating substantial past contact, we decline to do so. The existence of "substantial past contact" is inherently a fact-intensive inquiry for which it will be difficult, if not impossible, to formulate a concise standard or comprehensive factors. We agree with the Tyler court that the Legislature intended the standard to be flexible in order to deal with "inevitable situations which could not be otherwise anticipated by the drafters." Id. at 70.
Although the Topes presented evidence of the difficulties in maintaining contact with their grandchildren,[7] we believe our inquiry should be focused on the amount of actual contact which occurred, *872 rather than the difficulties encountered in maintaining contact. The focus is on the amount of contact the children have had with the adults. While the Topes may well have done the best they could in maintaining contact with their grandchildren, the fact remains that the actual contact was extremely minimal. The Topes exchanged correspondence[8] and monthly telephone calls with Cole and her children. Specifically, the Topes would send gifts and cards for various occasions and holidays. Most of this correspondence could be more fairly characterized as contact with the mother rather than contact with the children, particularly considering the ages of the children.[9] The Topes had only physically met their older grandchild on two occasions and had never seen their younger grandchild. Lindsay testified she was not even aware she had a second grandchild until March 2004.
Under any conceivable definition of "substantial past contact," the Topes lack substantial contact with the children. "Substantial" is defined as "of ample or considerable amount, quantity, size, etc." RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 1897 (unabridged 2nd ed.1987). Even assuming the facts alleged by the Topes are true, the evidence does not raise a fact issue on substantial past contact. Texas cases in which substantial past contact has been found have involved considerably more contact than the contact alleged in this case.[10] The Topes had only met the older child twice, and were not even aware their daughter had another child until March 2004 after the children were in custody of CPS. Although there was evidence of telephone calls, cards, and letters, such interaction is too minimal under the circumstances of this case to create a fact issue concerning substantial contact. Even when viewed in a light most favorable to the Topes, the Topes did not have substantial past contact with the children as a matter of law. We overrule the Topes' second point of error.

Because the Topes Lacked Standing as a Matter of Law, There is no Need to Decide Whether Trial Court Abused its Discretion in Holding the Hearing Before Discovery
In their third point of error, the Topes argue the trial court erred in holding a *873 hearing before discovery occurred. Because the policy behind discovery is to prevent "trial by ambush,"[11] the Topes argue the trial court abused its discretion in ruling on the issue of whether CPS withheld consent without good cause before discovery.
If the party has standing under Section 102.005, the party may still not be eligible to file an original petition. If both the child's parents have had their parental rights terminated, standing to file an original petition for adoption is limited by Section 102.006. Section 102.006 provides:
(a) Except as provided by Subsection (b), if the parent-child relationship between the child and every living parent of the child has been terminated, an original suit may not be filed by:
(1) a former parent whose parent-child relationship with the child has been terminated by court order;
(2) the father of the child; or
(3) a family member or relative by blood, adoption, or marriage of either a former parent whose parent-child relationship has been terminated or of the father of the child.
(b) The limitations on filing suit imposed by this section do not apply to a person who:
(1) has a continuing right to possession of or access to the child under an existing court order; or
(2) has the consent of the child's managing conservator, guardian, or legal custodian to bring the suit.
TEX. FAM.CODE ANN. § 102.006 (Vernon 2002). CPS argues that the Topes lack standing because the children's parents had their parental rights terminated before the suit. However, CPS could consent to the adoption under one of the exceptions to this limitation on standing. The Topes argue that CPS is withholding consent without good cause and that the trial court should have waived the requirement of consent in the best interests of the children. See Chapman v. Home, 561 S.W.2d 265, 267 (Tex.Civ.App.-Fort Worth 1978, no writ) (interpreting former Section 16.04).
Our disposition of this matter obviates the need to address this point of error. Section 102.006 merely bars certain parties from filing suit who would otherwise have standing to file the suit. See TEX. FAM. CODE ANN. § 102.006. Because the Topes lack standing, as a matter of law, under Section 102.005, there is no need to decide whether Section 102.006 prohibited the Topes from filing an original petition for adoption. Further, there is no need to decide whether the trial court abused its discretion in ruling on the motion before discovery because the Topes would not have standing under Section 102.005 even if an exception to Section 102.066 applied.

Conclusion
We agree with CPS that standing, as a component of subject-matter jurisdiction, can be challenged by procedural means other than summary judgment. Even when viewed in a light most favorable to the Topes, the Topes failed to raise a fact issue concerning whether they had substantial past contact with the children they sought to adopt. The trial court did not err in ruling, as a matter of law, that the Topes lacked standing. For the reasons stated, we affirm the judgment of the trial court.
DONALD R. ROSS, Justice, concurring in part, dissenting in part.
The majority concludes that standing can be challenged through means other than summary judgment and that the *874 Topes lacked substantial contact with the children as a matter of law. I concur that standing can be challenged through procedural means other than a motion for summary judgment. I respectfully dissent in part, however, because I believe a fact issue exists concerning whether the Topes had substantial past contact with their grandchildren.

A Fact Issue Exists Concerning Substantial Past Contact
I agree with the majority that the standard of review is de novo. I disagree, though, that there is no fact issue concerning substantial past contact. If a fact issue exists, the trial court is prohibited from granting the plea to the jurisdiction and the fact issue must be presented to the fact-finder at trial. Tex. Dep't of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 227 (Tex.2004); see County of Cameron v. Brown, 80 S.W.3d 549, 556 (Tex.2002). The trial court is only permitted to rule on the fact issue as a matter of law.
I also agree with the majority that what constitutes "substantial past conduct" must be a flexible standard to encompass unforeseeable situations. See Rodarte v. Cox, 828 S.W.2d 65, 69-70 (Tex.App.-Tyler 1991, writ denied). And, while the majority admits that the determination of whether "substantial past contact" has occurred is a fact-intensive inquiry, it concludes the contact in this case was not sufficient to be substantial contact as a matter of law. I disagree.
While there may be those circumstances where "substantial past contact" does not exist as a matter of law, this case is not one of them. Reasonable people could disagree on whether regular correspondence, monthly telephone calls, and the sending of gifts and cards for special occasions and holidays by grandparents in Montana to their grandchildren in Texas, and personal contact by those grandparents with one of their grandchildren on two occasions, constitute "substantial past contact." This evidence is enough to create a fact issue.
The majority points out that, under Section 102.005(4), the Topes have the same status as any adult with "substantial past contact." I agree that grandparents are not specifically listed in that provision as having standing to file a petition for adoption. I disagree, however, with the majority's conclusion that the Topes' status as grandparents is of no legal consequence in determining whether they have standing. (See slip opinion, p. 8, footnote 6). Their status as grandparents is a fact that cannot be ignored, and should be affirmatively considered, along with all other facts, in determining substantial past contact. It is at least relevant in weighing the grandparents' testimony on this issue.
The majority also states that, "Texas cases in which substantial past contact has been found have involved considerably more contact than the contact alleged in this case," and cites a number of such cases in a footnote. However, the finding of substantial past contact in each and every case cited was made after a full trial on the merits, not at a preliminary hearing on a plea to the jurisdiction. This is what the Topes are entitled to in this case  to have this issue submitted to a fact-finder. They may not prevail, but they are entitled to have their day in court. I would sustain the Topes' second point of error.

The Trial Court Abused its Discretion in Holding the Hearing Before Discovery
According to CPS, the Topes lack standing because the children's parents had their parental rights terminated before the suit. See TEX. FAM.CODE ANN. § 102.006 (Vernon 2002). CPS, though, could consent to the adoption under one of the exceptions to this limitation on standing. See id. Despite a prior request to CPS to *875 be notified of any proceedings,[12] the Topes were not notified by CPS concerning the parental termination proceedings.[13] The Topes did not learn of the termination of Melissa Cole's and her husband's parental rights until January 5, 2005. Lindsay contacted CPS and was informed there was nothing she could do. It is undisputed that CPS did not undertake a home study on the Topes or request that Montana CPS undertake such a study. The record contains no evidence concerning why CPS withheld consent to the adoption. The Topes argue the trial court should have waived the requirement of consent because Brazoria County is withholding consent without good cause and waiver of the consent would be in the best interests of the children. Chapman v. Home, 561 S.W.2d 265, 267 (Tex.Civ.App.-Fort Worth 1978, no writ) (court can waive consent under former Section 16.04 of Texas Family Code). The trial court found there was no evidence the "movant's failure to consent to respondents' petition for adoption was not in good faith."
I believe the trial court abused its discretion in ruling on the motion before discovery. "Whether a determination of subject-matter jurisdiction can be made in a preliminary hearing or should await a fuller development of the merits of the case must be left largely to the trial court's sound exercise of discretion." Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 554 (Tex.2000). A trial court abuses its discretion if it acts in an unreasonable or arbitrary manner, or without reference to guiding rules and principles. Narvaez v. Maldonado, 127 S.W.3d 313, 319 (Tex. App.-Austin 2004, no pet.). The trial court may have been able to waive the requirement that a managing conservator consent to the filing of the adoption petition if the consent was withheld without good cause and waiver of consent is in the best interest of the child.[14] Discovery is intended to prevent "trial by ambush." See Gutierrez v. Dallas Indep. Sch. Dist., 729 S.W.2d 691, 693 (Tex.1987). Without discovery, a ruling on whether Brazoria County withheld consent without good cause is premature. Further, whether the waiver of consent is in the best interests of the children is clearly a fact issue which must be decided by the fact-finder. I would sustain the Topes' third point of error.

Conclusion
Although I concur with the majority that standing can be challenged through procedural means other than summary judgment and that we should review de novo the trial court's ruling on standing, I believe a fact issue exists concerning whether the Topes had substantial past contact. I believe the trial court erred in dismissing the Topes' suit at this point in the proceedings. The issue of "substantial past contact" should have been allowed to proceed to trial. Further, the trial court abused its discretion in ruling on the issue of whether CPS withheld consent without good cause before discovery. I would reverse the judgment of the trial court and remand for further proceedings.
*876 I concur in part and respectfully dissent in part.
NOTES
[1] This appeal was transferred to this Court from the Fourteenth District Court of Appeals by order of the Texas Supreme Court as part of its docket equalization program.
[2] Melissa Cole's and her husband's parental rights were allegedly terminated due to drug addictions.
[3] We note that the Tyler Court of Appeals listed a "motion to dismiss" as a method to challenge standing. See Pringle, 862 S.W.2d at 724. Because "motion to dismiss" is a rather generic term, we will refer to the motion as a plea to the jurisdiction.
[4] In its brief, CPS cited Mercure Co., N.V. v. Rowland, 715 S.W.2d 677, 680-81 (Tex.App.-Houston [1st Dist.] 1986, writ ref'd n.r.e.), and Bowers v. Matula, 943 S.W.2d 536, 538 (Tex.App.-Houston [1st Dist.] 1997, no writ), for the proposition that we should review the trial court's finding for an abuse of discretion. Rowland, though, did not concern a lack of subject-matter jurisdiction. Rowland, 715 S.W.2d at 680-81. Although standing and thus subject-matter jurisdiction was at issue in Bowers, the court cited Rowland as authority. Bowers, 943 S.W.2d at 538 (citing Rowland, 715 S.W.2d at 680-81). We disagree with the First District Court of Appeals that standing should be reviewed for an abuse of discretion. At oral argument, the attorney for CPS stated he believed de novo review is the correct standard, citing In re SSJ-J, 153 S.W.3d 132, 134 (Tex.App.-San Antonio 2004, no pet.) (standing to bring original suit affecting parent-child relationship reviewed de novo).
[5] Although portions of Miranda were only a plurality decision, five justices of the Texas Supreme Court held there was no fact issue on gross negligence waiving sovereign immunity under the recreational use statute when Texas Parks and Wildlife introduced evidence refuting gross negligence and the Mirandas did not introduce any evidence. Miranda, 133 S.W.3d at 232. In his dissent, Justice Brister argued that evidence should not be considered during a plea to the jurisdiction but, rather, should be raised by a summary judgment motion. Id. at 244 (Brister, J., dissenting).
[6] We note that grandparents are granted several methods to obtain access to the grandchildren. Under the appropriate circumstances, these rights include access, a possessory conservatorship, and a right to file an original petition for managing conservatorship. See TEX. FAM.CODE ANN. §§ 102.004, 153.433 (Vernon Supp.2005). The Beaumont court has held that grandparents may file, under certain circumstances, an original suit for managing conservatorship or intervene in a suit requesting possessory conservatorship without the requirement of substantial past contact. See TEX. FAM.CODE ANN. § 102.004; In re M.A.M., 35 S.W.3d 788, 790 (Tex.App.-Beaumont 2001, no pet.) (substantial past contact does not apply to grandparents but rather only "other persons"). However, many of these rights are limited by the termination of the parental rights of the children's parents. Because Melissa Cole's and her husband's parental rights have been terminated, we recognize that the Topes may not be able to pursue the above rights. Here, where the Topes have filed suit based on a statute applicable to "any adult" with "substantial past contact," the Topes' status as grandparents is of no legal consequence in determining whether the Topes have standing.
[7] The Topes have a 5,000-acre cattle ranch in Montana, and Lindsay Tope is employed as a postmaster. Lindsay testified it is difficult for them to leave Montana due to their ranch obligations and her job. Due to various reasons, including her drug addiction, Cole would cease contact with the Topes for extended periods of time.
[8] At the hearing on the motion for new trial, the Topes introduced numerous letters sent to Lindsay Tope by Melissa Cole. The letters sent to Melissa Cole from Lindsay Tope were destroyed by a fire which burned Cole's residence.
[9] The older child is four years old, and the younger child is less than two.
[10] See, e.g., Chavez, 148 S.W.3d at 456 (standing to intervene when children had resided with grandparents for over a year); In re A.M., 60 S.W.3d 166, 168 (Tex.App.-Houston [1st Dist.] 2001, no pet.) (standing when seventeen-month-old child had resided with foster parents for fourteen months); In re M.T., 21 S.W.3d 925, 926 (Tex.App.-Beaumont 2000, no pet.) (standing to intervene when children had resided with foster parents for fourteen months); In re Hidalgo, 938 S.W.2d 492, 495-96 (Tex.App.-Texarkana 1996, no writ) (step-grandmother had standing to file petition for managing conservator when she and the child had been close since birth and child had resided with step-grandmother); Hirczy v. Hirczy, 838 S.W.2d 783, 786 (Tex. App.-Corpus Christi 1992, writ denied) (ex-husband of child's mother had standing when he had resided with child for three years in the role as her father); Rodarte, 828 S.W.2d at 69-70 (foster parents had standing to intervene when child had resided with them for over two years); see also In re J.W.M., 153 S.W.3d 541, 546-47 (Tex.App.-Amarillo 2004, pet. denied) (issue of standing may have been waived and children had resided with foster parents for fifteen months). But see Segovia-Slape v. Paxson, 893 S.W.2d 694, 696 (Tex. App.-El Paso 1995, no writ) (denial of writ of mandamus seeking leave to intervene when no evidence of substantial past contact, other than the allegation that child had resided with the aunt for several weeks, was introduced).
[11] See Gutierrez v. Dallas Indep. Sch. Dist., 729 S.W.2d 691, 693 (Tex.1987).
[12] In 2002, CPS became involved in the life of Melissa Cole. In March 2003, Lindsay wrote a caseworker at CPS requesting notification should her grandson become involved or "returns to or remains in your child welfare system."
[13] Lindsay testified that her daughter informed her in March 2004 that CPS had custody of the grandchildren.
[14] We note that Chapman concerns a statutory waiver of the general requirement that a managing conservator consent to the adoption. Chapman, 561 S.W.2d at 267; see TEX. FAM.CODE ANN. § 162.010 (Vernon 2002). CPS has not argued on appeal that this waiver is inapplicable to standing.